522 P.2d 567

CITY OF PHOENIX, Arizona, a municipal corporation, STATE of Arizona, Real Party in Interest, Appellants,

v.

ELLWEST STEREO THEATER and Ronald Dale Powell, Appellees.

No. 1 CA–CIV 2085.

Court of Appeals of Arizona, Division 1.

May 28, 1974.

Joe R. Purcell, Phoenix City Atty., by Alan S. Max, Asst. City Atty., Phoenix, for appellants.

Richard J. Hertzberg, Phoenix, for appellees.

## OPINION

HOWARD, Judge.

This case arises out of a seizure from Ellwest Stereo Theater of a motion picture and its projector pursuant to a search warrant obtained without a prior adversary hearing.

The warrant was supported by three affidavits. The affidavit of Officer Bishop, who had viewed the film, described the sexually explicit acts in the film. In addition, an affidavit of Dr. Dean B. Mitchell was presented to the issuing magistrate. Dr. Mitchell, a clinical psychologist who had qualified as an expert witness in numerous obscenity trials in both superior court and city court, stated that in his opinion (after reading Officer Bishop's affidavit) "each and every one of the aforementioned motion picture films is obscene in a legal sense." There was also an affidavit of Officer Campbell stating that he was informed and believed that the moviematic-type machine would be necessary to show the film and enable the police to make a videotape reproduction.

The seizure occurred shortly after the close of the business day. The motion picture was then videotaped and returned to the theater after it had reopened for business the next day.

Thereafter, a motion to suppress was filed by appellee and granted by the court. Appellants raise a single question for review:

"Are the constitutional rights of a commercial exhibitor of sexually explicit motion pictures infringed upon by the temporary taking of such a motion picture for the purpose of making an evidentiary copy thereof?"

Appellants' argument is that in balancing the need to obtain evidence vis-à-vis an ex-

hibitor's right to disseminate without restraint prior to a determination of obscenity—the procedure of taking, video-taping and returning an allegedly obscene motion picture passes constitutional muster by preserving the respective interests of the public and the exhibitor through minimal interference with dissemination.

Both appellants and appellees recognize that in the past our courts have enunciated a doctrine recognizing the need for adversary hearings prior to seizure of obscene items for routine prosecution under applicable statutes. NGC Theatre Corp. v. Mummert, 107 Ariz. 484, 489 P.2d 823 (1971); Anderson v. Coulter, 108 Ariz. 388, 390, 499 P.2d 103 (1972).

■ The purpose of the adversary hearing is to protect First Amendment rights. In the case of Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the Supreme Court of the United States held that the adversary proceeding was required to avoid "danger of abridgment of the right of the public in a free society to unobstructed circulation of non-obscene books." In the case at bench the City of Phoenix has attempted to create a procedure by which it could obtain evidence required to pursue prosecution and at the same time not restrain distribution until there could be a determination of obscenity. However in the case of Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), Mr. Chief Justice Burger notes that even in prior decisions [1] where there was absolute suppression of the materials themselves the court did not require that the adversary proceeding take place prior to initial seizure. The only requirement was that it be held " 'promptly so that administrative delay does not in itself become a form of censorship' ".

The Court in *Heller* presents very clearly the relationship as to the necessity of an adversary hearing to the seizure of films:

"[S]eizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned." 413 U.S. at 492, 93 S.Ct. at 2794, 37 L.Ed.2d at 754.

■ The search warrant issued here provided that the film be seized "at the close of the business day . . . for the purpose of photocopying" and that the motion picture film was to be returned to "Ellwest Stereo Theater within a reasonable period of time." The film was actually returned shortly after the theater opened the next morning.

Comparing the standards of the *Heller* case and the procedure used by the City in copying the film it is clear that if there was probable cause to issue the search warrant the court erred in ordering the evidence suppressed.

The magistrate issuing the warrant can find probable cause "from facts or circumstances presented to him under oath or affirmation." Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

1. United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The affidavit of Officer Bishop described in detail the physical acts portrayed in the film consisting of cunnilingus, fellatio, sexual intercourse and ejaculation. On reviewing this affidavit and that of Dr. Mitchell.[2] We are of the opinion that there were sufficient facts presented for the magistrate to issue a warrant which did not limit First Amendment rights.[3]

There was also a seizure of the film projector housing this film. This seizure was based on the affidavit of Officer Campbell which stated that this special projector apparatus was necessary to make a videotape reproduction and maintain the film in the same condition in which it was seized. This satisfied the probable cause requirement as to seizure of the projector.

The order granting the motion to suppress is reversed and the cause is remanded for further proceedings.

HATHAWAY, C. J. Division 2 and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

2. In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the court held that expert testimony on the part of the state was not necessary once the allegedly obscene material is placed in evidence. But see City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966).

3. In the case of Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1127 (1961), the Court held that affidavits merely stating that the materials to be seized were "obscene" were conclusory, unsupported by the underlying facts and therefore invalid.