688 P.2d 1037

William Joseph BAINES, Leonardo Ramirez Chiquette, Angel Chiquette and David Mason, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and the Honorable Michael J. Brown, Judge of the Superior Court, Respondents,

and

The STATE of Arizona, Real Party in Interest.

No. 2 CA–SA 050.

Court of Appeals of Arizona, Division 2.

May 10, 1984.

Reconsiderations Denied July 20, 1984.

Review Denied Sept. 27, 1984.

Natman Schaye, Tucson, for petitioner Baines.

John William Lovell, Tucson, for petitioner Leonardo Ramirez Chiquette.

Whitehill, Stolkin, Karp, West, Weiss & Berger, P.C. by Stephen M. Weiss, Tucson, for petitioner Angel Chiquette.

Davis, Siegel & Gugino by Michael L. Piccarreta, Tucson, for petitioner Mason.

Robert K. Corbin, Atty. Gen. by Lindsay Brew, Asst. Atty. Gen., Tucson, for real party in interest.

## OPINION

HATHAWAY, Judge.

This special action was taken from the denial by the trial court of the petitioners' motion for redetermination of probable cause or, in the alternative, dismissal of the indictment. The petitioners were among 34 defendants named in a multi-count indictment handed down by the state grand jury on June 28, 1983, alleging various offenses including the possession, transportation and sale of marijuana and narcotic drugs, leading organized crime, illegally conducting an enterprise, and conspiracy. All of the defendants, including petitioners, were charged under Count 4 of the indictment with illegally conducting an enterprise in violation of A.R.S. § 13–2312. Petitioner Angel Chiquette was also charged under Count 13 of the indictment with conspiracy, in violation of A.R.S. § 13–1003. Although petitioners Baines and Mason were charged with other offenses in other counts of the indictment, no issues have been presented to this court with respect to those other counts.

The indictment followed extensive testimony before the grand jury from two witnesses concerning an organization of individuals allegedly headquartered in Douglas, Arizona, engaged in the production and importation of marijuana and cocaine and their subsequent distribution and sale throughout the United States. The witnesses were an informant, who had worked for the organization for several years as a major distributor and seller, and an officer of the Tucson Police Department who had corroborated much of the information given to him by the informant.

## COUNT 4

Count 4 of the indictment alleged generally that between September 1980 and September 1982, the defendants were "employed by or associated with an enterprise and conducted its affairs through racketeering." This count follows with 19 pages of allegations describing in general terms the creation and operation of the organization to import and distribute marijuana and cocaine, the role of each defendant in the organization, and specific acts done by each in connection with the organization. With respect to these petitioners, the indictment alleges as follows:[1]

1. Petitioner David Mason.

"... DAVID MASON was an associate of RUBEN SANCHEZ [an alleged co-founder of the organization], he assisted in loading, unloading, and guarding marijuana at Sanchez' house in October, 1980.

\* \* \* \* \* \*

---

1. For purposes of simplification, we have quoted the allegations out of order.

8. On or about October 1980 EN-RIQUE PINEDO, DAVID MASON and KARL FRANKLIN STEFAN, JR. unloaded the 800 pounds of marijuana [previously transported by others] at the house of RUBEN SANCHEZ at 6631 North Camino Arturo, Tucson, Arizona."

2. Petitioner Angel Chiquette.

"ANGEL CHIQUETTE was a worker for the organization.

\* \* \* \* \* \*

45. On November 24 and 25, 1980, ANGEL CHIQUETTE stayed at the Cliff Manor Inn in Tucson, Arizona."

3. Petitioner Leonardo Chiquette.

"LEONARDO CHIQUETTE was a worker and salesman for the organization.

\* \* \* \* \* \*

67. On or about March 25, 1981, LEO-NARDO CHIQUETTE traveled from Tucson, Arizona to Denver, Colorado and stayed at the Howard Johnson Motor Lodge.

68. On or about March 25, 1981, LEO-NARDO CHIQUETTE sold marijuana obtained from MANUEL SAMANIE-GO to VICTORIO VASQUEZ at the Howard Johnson Motor Lodge in Denver, Colorado."

4. Petitioner William Joseph Baines.

"WILLIAM JOSEPH BAINES was a driver for and assistant to MICHAEL WHALEN [alleged to be a customer of the organization]. He purchased marijuana in Tucson, Arizona for resale in Oregon.

\* \* \* \* \* \*

83. On or about December 12, 1981, WILLIAM JOSEPH BAINES stayed at the Rodeway Inn in Tucson, Arizona.

\* \* \* \* \* \*

85. On or about December 13, 1981, WILLIAM JOSEPH BAINES rented an Oldsmobile Cutlass automobile from Payless Car Rental, Tucson, Arizona

\* \* \* \* \* \*

87. On or about December 13, 1981, WILLIAM JOSEPH BAINES and KARL F. STEFAN, JR. transported marijuana in the Oldsmobile Cutlass from Tucson, Arizona to Portland, Oregon where they delivered it to MICHAEL WHALEN."

A.R.S. § 13-2312(B), the statute upon which this count of the indictment was based, provides as follows:

"A person commits illegally conducting an enterprise if such person is employed or associated with any enterprise and conducts or participates in the conduct of such enterprise's affairs through racketeering."

"Enterprise" is defined to include "any group of persons associated in fact although not a legal entity." A.R.S. § 13-2301(D)(2). As the statute was originally enacted, "racketeering" was defined in part as:

"... any act, committed for financial gain, which is chargeable or indictable under the laws of this state and punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving:

\* \* \* \* \* \*

(k) Dealing in narcotic drugs or dangerous drugs." A.R.S. § 13-2301(D)(4).

In 1983, subsection (k) was amended to include marijuana. Laws 1983, Ch. 45, § 1.

These statutes were adapted from the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. In the absence of any Arizona cases, we will look to federal decisional law for guidance in construing and applying the Arizona statute. The RICO counterpart to A.R.S. § 13-2312(B) provides:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Racketeering is similarly defined to include certain enumerated acts indictable under state or federal law. 18 U.S.C. § 1961(1).

■ The effect of RICO is to create a separate offense for the commission of certain crimes, which are themselves separately indictable, where those crimes are committed by an employee or associate of an enterprise in the conduct of its affairs. *United States v. White*, 386 F.Supp. 882 (E.D.Wis.1974). The essential elements of a substantive RICO offense which must be alleged and proved are (1) the existence of an enterprise, (2) which affects interstate or foreign commerce, (3) that the defendant was employed by or associated with the enterprise, (4) that he participated, directly or indirectly, in the conduct of the affairs of the enterprise, and (5) that he participated through a pattern of racketeering. *United States v. Kopituk*, 690 F.2d 1289 (11th Cir.1982). The federal statute thus imposes two requirements not present in A.R.S. § 13–2312(B). First, the enterprise must be shown to affect interstate or foreign commerce. Second, the prosecution must prove a pattern of racketeering activity, that is, commission of at least two so-called "predicate" offenses. See *United States v. Welch*, 656 F.2d 1039 (5th Cir. 1981). Eliminating these additional requirements, we find that the essential elements of an offense under A.R.S. § 13–2312(B), which must be alleged and proved as to each defendant, are (1) the existence of an enterprise, (2) that the defendant was employed by or associated with the enterprise, (3) that he conducted or participated in the conduct of the affairs of the enterprise, and (4) that he conducted or participated in the conduct of the affairs of the enterprise through racketeering, i.e., through the commission of at least one predicate offense.[2]

Turning to Count 4 of the indictment, the petitioners' arguments may be summarized as follows: (1) that the allegations pertaining to these petitioners are legally insuffi-

cient because they do not allege an act of racketeering as defined in A.R.S. § 13–2301(D)(4); (2) that even if Count 4 is sufficient on its face, there was no evidence before the state grand jury regarding the alleged acts of racketeering; (3) that the indictment is duplicitous; (4) that the state grand jury had no authority to return an indictment for violations of A.R.S. § 13–2312; (5) that Arizona had no jurisdiction over the offenses, and (6) that the prosecutor abused the grand jury process.

## 1. LEGAL INSUFFICIENCY.

■ Analysis of the first argument requires a brief recitation of statutory history. As noted above, prior to 1983 the definition of racketeering found in § 13–2301(D)(4) did not expressly include acts involving dealing in marijuana. Accordingly, such acts could constitute predicate offenses for purposes of § 13–2312(B) only if they fell within the meaning of acts involving dealing in narcotic drugs or dangerous drugs. Since the statute does not separately define these terms, we look to the general definitions in § 13–105. Prior to September 1, 1981, § 13–105(17) defined "narcotic drugs" with reference to the definition found in § 36–1001(14). This definition includes cannabis as a narcotic drug, which was in turn defined to include marijuana. A.R.S. § 36–1001(13). At the same time, "dangerous drugs" were defined with reference to A.R.S. § 32–1901, which did not include marijuana. See A.R.S. § 13–105(6). Thus, prior to September 1, 1981, marijuana constituted a narcotic drug and marijuana offenses were therefore encompassed within the definition of racketeering. On that date, however, § 36–1001 was repealed and § 13–105(6) and (17) were amended to define narcotic and dangerous drugs with reference to newly adopted § 13–3401. Under this latter statute, neither term was defined to include marijuana, which was separately defined in another subsection.

---

**2.** We note that an offense under this statute differs significantly from an offense under the conspiracy statute, A.R.S. § 13–1003, in that under the latter statute only one overt act by one

of the conspirators need be alleged and proved. Under § 13–2312(B), the state must allege and prove the commission of a predicate act of racketeering by each defendant.

See A.R.S. § 13–3401(6), (15) and (16). Thus, petitioners argue, from September 1, 1981, until the amendment of § 13–2301 in 1983, acts involving dealing with marijuana were not included in the definition of racketeering and could not serve as predicate offenses for purposes of § 13–2312(B).

While the state acknowledges that marijuana was removed from the statutory definition of narcotic drugs in 1981, it argues that the acts of the petitioners nevertheless come within the definition of racketeering because of the inclusion of cannabis as a narcotic drug. "Cannabis" is defined in § 13–3401(4) as:

"... the following substances under whatever names they may be designated:

(a) The resin extracted from any part of a plant of the genus cannabis, and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin. Cannabis does not include oil or cake made from the seeds of such plant, any fiber, compound, manufacture, salt, derivative, mixture or preparation of the mature stalks of such plant except the resin extracted from the stalks or any fiber, oil or cake or the sterilized seed of such plant which is incapable of germination.

(b) Every compound, manufacture, salt, derivative, mixture or preparation of such resin or tetrahydrocannabinol."

"Marijuana" is defined in § 13–3401(15) as:

"... all parts of any plant of the genus cannabis, from which the resin has not been extracted, whether growing or not, and the seeds of such plant. Marijuana does not include the mature stalks of such plant, or the sterilized seed of such plant which is incapable of germination."

In essence, the state argues that the definition of cannabis as including any "mixture or preparation" of the plant is sufficiently broad to include the substances with which the petitioners were dealing. While this may be true as a factual matter, the difficulty with the state's argument is that Count 4 of the indictment does not allege predicate offenses pertaining to cannabis; indeed, nowhere in the indictment is that term used. The allegations pertaining to these petitioners specifically use the term marijuana. Our supreme court has consistently rejected the contention that marijuana and cannabis are synonymous terms in legal contemplation. *State v. Zeiter*, 119 Ariz. 193, 580 P.2d 331 (1978); *State v. Bollander*, 110 Ariz. 84, 515 P.2d 329 (1973). Because the legislature created two separate definitions for these terms, we can only conclude that it intended each term to have a separate and legally distinct meaning. We are therefore precluded from substituting the word cannabis for the word marijuana in reading the indictment. We hold that from September 1, 1981, to the effective date of the 1983 amendment of § 13–2301(D)(4)(k), acts involving dealing with marijuana did not come within the definition of racketeering for purposes of § 13–2312(B).

In light of this conclusion, we find that the trial court erred in denying the motion of petitioner William Joseph Baines to dismiss Count 4 as to him. The only allegations as to predicate offenses committed by Baines pertain to an alleged transportation of marijuana from Arizona to Oregon which occurred in December of 1981. Since this offense does not come within the definition of racketeering effective on that date, Count 4 of the indictment is legally insufficient as to Baines and should have been dismissed. As to petitioners David Mason and Leonardo Chiquette, however, the predicate acts are all alleged to have occurred prior to September 1, 1981. Since marijuana was included within the definition of narcotic drugs during this time period, the fact that the predicate offenses pertain to marijuana does not render this count legally insufficient and the trial court properly denied these petitioners' motions on that basis.

As to petitioner Angel Chiquette, although the sole allegation pertaining to him sets forth an act occurring prior to September 1, 1981, this allegation is insufficient as an allegation of a predicate offense. As noted above, the state is required to plead and prove an act of racket-

eering as to each defendant. The bare allegation that Angel Chiquette checked into a motel on a certain date does not constitute an allegation of an indictable offense, much less an act of racketeering as set forth in A.R.S. § 13–2301(D)(4). Since Count 4 is legally insufficient as to him, the trial court erred in denying this motion to dismiss that count.

## 2. NO EVIDENCE.

■ Turning to petitioners' remaining arguments as applied to petitioners Leonardo Chiquette and David Mason, petitioners acknowledge that this court has no authority to consider the weight or legal sufficiency of the evidence presented to the grand jury. *State ex rel. Preimsberg v. Rosenblatt*, 112 Ariz. 461, 543 P.2d 773 (1975). They argue, however, that this rule is inapplicable and that a reviewing court may order dismissal where there is no evidence presented to the grand jury in support of the offense alleged in the indictment. We need not reach this issue, however, since our review of the grand jury transcripts has shown that testimony was given with respect to the acts of racketeering alleged in Count 4 of the indictment as to these petitioners.

## 3. DUPLICITY.

■ This argument is without merit. An indictment is duplicitous if it charges more than one crime within the same count. *Spencer v. Coconino County Superior Court, Division 3*, 136 Ariz. 608, 667 P.2d 1323 (1983). Duplicitous indictments are prohibited because they fail to give adequate notice of the charge to be defended, they present the hazard of a non-unanimous jury verdict, and they make a precise pleading of prior jeopardy impossible in the event of a later prosecution. Id. Here, it is clear that these petitioners have been charged with only one crime, i.e., illegally conducting an enterprise. The fact that one of the elements of the crime alleged is a separately indictable offense does not render the indictment duplicitous. In this respect, the indictment is no differ-

ent than an indictment under the felony-murder statute. See A.R.S. § 13–1105(A)(2). Nor is there a danger of a non-unanimous jury verdict. While such a danger might arise if the indictment alleged more than one act of racketeering as to each petitioner, in this case only one such act has been alleged as to petitioner Chiquette (sale of marijuana) and as to petitioner Mason (possession of marijuana for sale). Finally, the fact that numerous other defendants are charged in this count in no way hinders these petitioners' ability to prepare a defense, or to plead prior jeopardy. The charges as to them are clear.

## 4. JURISDICTION OF STATE GRAND JURY.

■ Petitioners argue that the state grand jury has no jurisdiction under A.R.S. § 21–422 to return an indictment for marijuana offenses. However, petitioners are not charged with marijuana offenses, but rather with illegally conducting an enterprise.

■ The state grand jury's authority over this offense is clearly set forth in subsection (B)(1) of that statute, pertaining to offenses "[a]rising out of ... business enterprises...." Even if petitioners are charged with marijuana offenses, the state grand jury's authority is found in subsection (B)(2), which pertains to offenses "[a]rising out of or in connection with any ... possession, receipt, sale or transportation of stolen property or other contraband, ... or ... narcotics, which occurs in more than one county ...." Petitioners' argument that the term "contraband" is used in the statute to modify "stolen property" is specious. Contraband is any property which is unlawful to produce or possess, and necessarily includes marijuana. See *United States v. Williams*, 533 F.Supp. 448 (E.D.Pa.1982); *State v. Meyer*, 283 Or. 449, 583 P.2d 553 (1978).

## 5. STATE JURISDICTION.

■ Petitioner Chiquette argues that the State of Arizona has no jurisdiction

over him as to this offense because none of the essential elements of the crime occurred in Arizona. This argument ignores the allegations of Count 4 concerning the existence of the enterprise, an essential element of the offense charged, which set forth that the enterprise operated "in and out of Tucson, Arizona throughout its history." This is sufficient under A.R.S. § 13–108.

## ABUSE OF GRAND JURY

Petitioners' arguments are without merit and will be dealt with summarily. The argument that the state withheld "requested and crucial evidence," in reality not evidence but a transcript of prior proceedings, is belied by the record, which shows that the grand jury was in fact provided with the requested transcripts. Similarly, there is no basis for the contention that the prosecutor "manipulated" the proceedings by asking leading questions of the witnesses. As the petitioners acknowledge, the proceedings were lengthy and dealt with complex factual situations. Under these circumstances, it was not improper for the prosecutor to utilize leading questions in an effort to clarify the testimony. Petitioners' argument that improprieties occurred in the instruction of the grand jury by reading to them the applicable statutes is unclear and unsubstantiated. We find no abuse and no prejudice to the petitioners. Finally, petitioners argue that the grand jury was abused by the prosecutor's preparation in advance of a draft indictment. No abuse can be found here, particularly in light of the fact that the prosecutor repeatedly advised the grand jury of its right to add to or delete from the draft indictment, to call additional witnesses, to receive additional legal advice from the prosecutor or to terminate the proceedings with no indictment.

## COUNT 13

Only petitioner Angel Chiquette is charged under this count of the indictment, which provides:

"On or about November 20 to December 11, 1980, Manuel Samaniego, Ruben Sanchez, Sandra Samaniego, Angel Chiquette, Luis Alvarez Arciniega, Enrique Pinedo, Francisco Martinez, with the intent to aid or promote the offense of transportation of marijuana, and sale of marijuana agreed together that at least one of them or another would engage in conduct constituting the offense.

In furtherance of this agreement one of the parties to the agreement performed each of the acts alleged in paragraphs numbered 39 to 41, 43, 45 to 49 and 55 to 60 of count 4, the allegations of which are incorporated herein by reference.

All in violation of A.R.S. § 13–1003."

Chiquette argues that the grand jury was presented with no evidence as to one essential element of the crime, that is, any agreement between him and his alleged co-conspirators to commit the offense of transportation or sale of marijuana. As noted above, we are precluded from reviewing the sufficiency of the evidence before the grand jury and must therefore deny relief if there was any evidence relating to this element of the crime. See *State v. Jessen*, 130 Ariz. 1, 633 P.2d 410 (1981). The transcript of the proceedings includes the testimony of the informant that Chiquette was a courier for the head of the organization, Manuel Samaniego, and that he had stayed at the same motel in Tucson at the same time as Samaniego while the latter was in the process of transporting $200,000 in cash proceeds from the sale of drugs in Denver to Tucson for the purpose of paying the suppliers and arranging for additional shipments. While this testimony may well not be sufficient to sustain a conviction, it is at least some evidence from which the grand jury could infer the existence of an agreement to commit a substantive offense. Under Arizona law, this is all that is required.

The trial court is directed to dismiss Count 4 of the indictment as to petitioners Baines and Angel Chiquette. The remainder of petitioners' request for relief is de-

nied. The state's motion for costs and denial of appointed counsel fees is denied.

BIRDSALL, C.J., and HOWARD, J., concur.